**Nos. 25-3573 & 26-1122**

IN THE
**UNITED STATES COURT OF APPEALS**
FOR THE **THIRD CIRCUIT**

———————————

**UNITED STATES OF AMERICA**

**v.**

**LAMONICA MCIVER,**
Appellant

**Appeals from Interlocutory Orders in a Criminal Case of the United States District Court for the District of New Jersey (Crim. No. 25-388). Sitting Below: Hon. Jamel K. Semper, U.S.D.J.**

———————————

**BRIEF FOR APPELLEE**

———————————

**Robert Frazer**
**United States Attorney**
**Attorney for Appellee**
**970 Broad Street**
**Newark, New Jersey 07102-2535**
**(973) 645-2700**

**On the Brief:**

**Mark E. Coyne**
**Supervisory Assistant U.S. Attorney**
**Chief, Appeals Division**
**(973) 297-2002**

TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES..............................................................ii

TABLE OF ABBREVIATIONS ...........................................................x

COUNTERSTATEMENT OF JURISDICTION .......................................1

RELATED CASES..........................................................................1

STATEMENT OF ISSUES.................................................................1

STATEMENT OF CASE....................................................................2

SUMMARY OF ARGUMENT ...........................................................7

ARGUMENT .................................................................................9

I.  The Speech or Debate Clause Doesn't Apply to Acts of Violence..........9

II.  There Is No Basis for the Broader Immunity That McIver Seeks Under the Separation-of-Powers, Which Wouldn't Cover Her Charges in Any Event ........................................................... 20

III.  This Court Lacks Jurisdiction Over McIver's Targeting Claims, and the District Court Properly Rejected Them in Any Event................... 23

    A.  This Court Should Dismiss for Lack of Appellate Jurisdiction McIver's Appeal from the Denial of Her Targeting Motion........ 23

    B.  McIver's Selective Prosecution and Enforcement Claims Fail on Their Merits................................................................. 31

    C.  McIver's Vindictive Prosecution Claim Fails on Its Merits, Too .................................................................................. 41

    D.  The District Court Properly Exercised Its Discretion to Deny McIver's Far-Ranging Discovery Requests............................. 48

CONCLUSION ............................................................................. 51

## TABLE OF AUTHORITIES

**Cases**            **Page(s)**

*Abney v. United States*,
431 U.S. 651 (1977)................................................................28, 29, 30, 31

*Andrews v. Warden*,
958 F.3d 1072 (11th Cir. 2020)................................................................ 36

*Arbaugh v. Y & H Corp.*,
546 U.S. 500 (2006)................................................................ 30

*Bordenkircher v. Hayes*,
434 U.S. 357 (1978)................................................................ 31

*Callahan v. U.S. Dep't of Health & Human Servs.*,
939 F.3d 1251 (11th Cir. 2019)................................................................ 40

*Coffin v. Coffin*,
4 Mass. 1 (1808)................................................................21, 22

*Connecticut Bd. of Pardons v. Dumschat*,
452 U.S. 458 (1981)................................................................ 37

*Cunningham v. Hamilton County, Ohio*,
527 U.S. 198 (1999)................................................................ 26

*Davis v. Passman*,
442 U.S. 228 (1979)................................................................ 21

*DHS v. Regents of Univ. of California*,
591 U.S. 1 (2020) ................................................................ 47

*Digital Equip. Corp. v. Desktop Direct, Inc.*,
511 U.S. 863 (1994)................................................................ 25

*Doe v. McMillan*,
412 U.S. 306 (1973)................................................................12, 14

*Forrester v. White*,
484 U.S. 219 (1988)................................................................12, 21

*Frederick Douglass Foundation, Inc. v. District of Columbia*,
  82 F.4th 1122 (D.C. Cir. 2023)................................................................40, 41

*Goldman v. Citigroup Global Mkts. Inc.*,
  834 F.3d 242 (3d Cir. 2016) ............................................................... 30

*Gravel v. United States*,
  408 U.S. 606 (1972)...............................................................*passim*

*Griswold v. Coventry First LLC*,
  762 F.3d 264 (3d Cir. 2014) ............................................................... 31

*Hartman v. Moore*,
  547 U.S. 250 (2006)............................................................................ 33

*Harvard v. Cesnalis*,
  973 F.3d 190 (3d Cir. 2020) ............................................................... 34

*Helstoski v. Meanor*,
  442 U.S. 500 (1979)........................................................................... 1

*Hutchinson v. Proxmire*,
  443 U.S. 111 (1979)............................................................................ 10

*In re Search of Elec. Comms.*,
  802 F.3d 516 (3d Cir. 2015) ............................................................... 27

*Jarkesy v. SEC*,
  803 F.3d 9 (D.C. Cir. 2015) ............................................................... 27

*Midland Asphalt Corp. v. United States*,
  489 U.S. 794 (1989)............................................................................ 25

*Nixon v. United States*,
  506 U.S. 224 (1993)............................................................................ 37

*Nixon v. United States*,
  703 F. Supp. 538 (S.D. Miss. 1988)....................................................... 34

*Noem v. Abrego Garcia*,
  145 S. Ct. 1017 (2025) ....................................................................... 45

*Ohio Adult Parole Auth. v. Woodard*,
  523 U.S. 272 (1998)............................................................................ 38

*Papotto v. Hartford Life Ins. Co.*,
  731 F.3d 265 (3d Cir. 2013) ..................................................... 23

*Prudential Ins. Co. v. Sipula*,
  776 F.2d 157 (9th Cir. 1985) ................................................23, 24

*Reno v. American-Arab Anti-Discrimination Comm.*,
  525 U.S. 471 (1999) ................................................................ 32

*Romero Barceló v. Hernández Agosto*,
  15 P.R. Offic. Trans. 487 (P.R. 1984) ...................................... 14

*Steel Co. v. Citizens for a Better Env't*,
  523 U.S. 83 (1998) .................................................................. 30

*Supreme Court of Virgina v. Consumers Union, Inc.*,
  446 U.S. 719 (1980) ................................................................ 21

*Trump v. United States*,
  603 U.S. 593 (2024) ................................................................ 22

*United States v. Abrego Garcia*,
  802 F. Supp. 3d 1055 (M.D. Tenn. 2025) ................................. 45

*United States v. Adams*,
  870 F.2d 1140 (6th Cir. 1989) ..............................................44, 45

*United States v. Ambort*,
  193 F.3d 1169 (10th Cir. 1999)................................................ 25

*United States v. Armstrong*,
  517 U.S. 456 (1996)..............................................................35, 49

*United States v. Arrington*,
  309 F.3d 40 (D.C. Cir. 2002) ................................................16, 17

*United States v. Bales*,
  813 F.2d 1289 (4th Cir. 1987) ................................................. 24

*United States v. Ball*,
  18 F.4th 445 (4th Cir. 2021)..................................................... 41

*United States v. Bass*,
  536 U.S. 862 (2002).................................................................. 50

*United States v. Batchelder*,
  442 U.S. 114 (1979) ............................................................. 32

*United States v. Bergrin*,
  682 F.3d 261 (3d Cir. 2012) ................................................. 28

*United States v. Biaggi*,
  853 F.2d 89 (2d Cir. 1988) ................................................... 17

*United States v. Bout*,
  731 F.3d 233 (2d Cir. 2013) ................................................. 46

*United States v. Brewster*,
  408 U.S. 501 (1972) ........................................................ *passim*

*United States v. Bucci*,
  582 F.3d 108 (1st Cir. 2009) ................................................ 50

*United States v. Butterworth*,
  693 F.2d 99 (9th Cir. 1982) ...................................... 24, 26, 27

*United States v. Claiborne*,
  727 F.2d 842 (9th Cir. 1984) ............................................... 24

*United States v. Esposito*,
  968 F.2d 300 (3d. Cir. 1992) ..................................... 43, 44, 45

*United States v. Ferguson*,
  246 F.3d 129 (2d Cir. 2001) ................................................. 28

*United States v. Gallegos-Curiel*,
  681 F.2d 1164 (9th Cir. 1982) ............................................. 42

*United States v. Giraud*,
  160 F.3d 390 (3d Cir. 2025) ................................................ 47

*United States v. Goodwin*,
  457 U.S. 368 (1982) ................................................ 31, 43, 46

*United States v. GossJanikowski*,
  348 F.R.D. 140 (D.D.C. 2025) ............................................. 36

*United States v. Hollywood Motor Car Co.,*
  458 U.S. 263 (1982)............................................................... 24, 25, 26

*United States v. Hsia,*
  176 F.3d 517 (D.C. Cir. 1999).............................................................29, 30

*United States v. Jackson,*
  327 F.3d 273 (4th Cir. 2003) ............................................................. 48

*United States v. James,*
  888 F.3d 42 (3d Cir. 2018) .............................................................*passim*

*United States v. Jarrett,*
  447 F.3d 520 (7th Cir. 2006) .............................................................42, 48

*United States v. Johnson,*
  383 U.S. 169 (1966)............................................................. 9

*United States v. Jones,*
  159 F.3d  (6th Cir. 1998).............................................................. 50

*United States v. McCord,*
  509 F.2d 334 (D.C. Cir. 1974)............................................................. 37

*United States v. McDade,*
  28 F.3d 283 (3d Cir. 1994) .............................................................*passim*

*United States v. Meadows,*
  867 F.3d 1305 (D.C. Cir. 2017).............................................................41, 44

*United States v. Menendez,*
  831 F.3d 155 (3d Cir. 2016) .............................................................*passim*

*United States v. Meyer,*
  810 F.2d 1242 (D.C. 1987)............................................................. 44

*United States v. Monsoor,*
  77 F.3d 1031 (7th Cir. 1996) .............................................................41, 46

*United States v. Myers,*
  692 F.2d 823 (2d Cir. 1982) ............................................................. 14

*United States v. Noonan,*
  906 F.2d 952 (3d Cir. 1990) ............................................................. 37

*United States v. P.H.E., Inc.*,
965 F.2d 848 (10th Cir. 1992) ...........................................................25, 26

*United States v. Paramo*,
998 F.2d 1212 (3d Cir. 1993)..................................................... 42, 45, 46

*United States v. Pungitore*,
910 F.2d 1084 (3d Cir. 1990)................................................................ 41

*United States v. Ray*,
899 F.3d 852 (10th Cir. 2018) .............................................................. 42

*United States v. Renzi*,
769 F.3d 731 (9th Cir. 2014) ...........................................................16, 18

*United States v. Saltzman*,
537 F.3d 353 (5th Cir. 2008) ................................................................ 44

*United States v. Sanders*,
211 F.3d 711 (2d Cir. 2000) ...................................................... 42, 46, 50

*United States v. Schock*,
891 F.3d 334 (7th Cir. 2018) ................................................................ 29

*United States v. Schoolcraft*,
879 F.2d 64 (3d Cir. 1989) ................................................................... 33

*United States v. Slatten*,
865 F.3d 767 (D.C. Cir. 2017).............................................................. 45

*United States v. Stewart*,
590 F.3d 93 (2d Cir. 2009) ..............................................................42, 43

*United States v. Tann*,
577 F.3d 533 (3d Cir. 2009) ................................................................. 30

*United States v. Taylor*,
686 F.3d 182 (3d Cir. 2012) ...................................................... 23, 32, 33

*United States v. Torquato*,
602 F.2d 564 (3d Cir. 1979) .............................................................33, 39

*United States v. Wampler*,
624 F.3d 1330 (10th Cir. 2010)........................................................26, 27

*United States v. Washington,*
  869 F.3d 193 (3d Cir. 2017) ................................................................*passim*

*United States v. Waterman,*
  755 F.3d 171 (3d Cir. 2014) ................................................................ 48

*United States v. Wilson,*
  32 U.S. (7 Pet.) 150 (1833).................................................................. 38

*United States v. Wilson,*
  262 F.3d 305 (4th Cir. 2001) ............................................................... 43

*United States v. Wittig,*
  575 F.3d. 1085 (10th Cir. 2009)........................................................... 28

*Walker v. Jones,*
  733 F.2d 923 (D.C. Cir. 1984)............................................................. 21

*Wasman v. United States,*
  468 U.S. 559 (1984)............................................................................ 42

*Wayte v. United States,*
  470 U.S. 598 (1985).........................................................31, 33, 40, 41

*Youngblood v. DeWeese,*
  352 F.3d 836 (3d Cir. 2003) ........................................................... 1, 12

## Constitution, Statutes and Rules

U.S. Const., art. I, § 6, cl. 1 .........................................................9, 12, 15

18 U.S.C. § 111..................................................................................... 39

18 U.S.C. § 111(a)(1)........................................................................... 5, 6

18 U.S.C. § 111(a)..................................................................... 16, 39, 41

18 U.S.C. § 1951 .................................................................................. 21

18 U.S.C. § 1962 .................................................................................. 21

28 U.S.C. § 1291 ............................................................................... 1, 25

Fed. R. App. P. 3(a)(2)......................................................................... 24

## Other Authorities

GRAHAM C. DODDS, MASS PARDONS IN AMERICA:
  REBELLION, PRESIDENTIAL AMNESTY, AND RECONCILIATION (2021)......... 38

Michael J. Gerhardt, *Dissent in the Senate*,
  127 Yale L.J. Forum 728 (2018) .............................................................. 14

Robert J. Reinstein & Harvey A. Silverglate, *Legislative Privilege and the
  Separation of Powers*, 86 Harv. L. Rev. 1113 (1973) ...................................... 14

Proc. No. 179 (Dec. 25, 1868), *available at* https://www.presidency.ucsb.
  edu/documents/proclamation-179-granting-full-pardon-and-amnesty-for-
  the-offense-treason-against-the  (last checked Apr. 28, 2026)...................... 38

Proc. No. 4483,
  42 Fed. Reg. 4391 (Jan. 21, 1977).............................................................. 38

Proc. No. 10467,
  87 Fed. Reg. 61441 (Oct. 6, 2022) .......................................................... 38

Proc. No. 10887,
  90 Fed. Reg. 8331 (Jan. 20, 2025)........................................................... 34

The White House, *Fact Sheet: President Biden Commutes the Sentences of 37
  Individuals on Death Row* (Dec. 23, 2024), *available at* https://
  bidenwhitehouse.archives.gov/briefing-room/statements-
  releases/2024/12/23/fact-sheet-president-biden-commutes-the-
  sentences-of-37-individuals-on-death-row/(last checked Apr. 28, 2026)..... 38

## TABLE OF ABBREVIATIONS

"A"        refers to the multi-volume appendix LaMonica McIver filed.

"AAB"      refers to the brief of *amici curiae* American Civil Liberties Union of New Jersey, National Women's Law Center and NAACP Legal Defense & Educational Fund, using its internal pagination.

"DB"       refers to McIver's opening brief, using its internal pagination.

"Doc."     refers to a document filed in Appeal No. 25-3573, using the pagination on the top of that docket entry.

"DE"       refers to the District Court docket entry below, using the pagination on the top of that entry, using its internal pagination.

"FMCAB"  refers to the brief of *amici curiae* Former Members of Congress.

## COUNTERSTATEMENT OF JURISDICTION

Defendant LaMonica McIver is appealing the denial of her motions to dismiss her indictment because of (1) the Speech or Debate Clause, (2) legislative immunity and (3) alleged selective enforcement, selective prosecution and vindictive prosecution (collectively, "Targeting") and for discovery regarding her Targeting claims. This Court has jurisdiction over McIver's Speech or Debate Clause and legislative immunity claims under 28 U.S.C. § 1291 through the collateral order doctrine. *See Helstoski v. Meanor*, 442 U.S. 500, 506–08 (1979) (Speech or Debate Clause); *Youngblood v. DeWeese*, 352 F.3d 836, 839 (3d Cir. 2003) (legislative immunity). But this Court lacks jurisdiction over McIver's remaining claims. *See* Point III.A, *infra*.

## RELATED CASES

McIver's prosecution resulted from her physical efforts to prevent federal law enforcement agents from arresting the mayor of Newark, New Jersey at a Newark immigration facility. The mayor was charged with trespassing, a petty offense, which charge the Government quickly dismissed with prejudice. *United States v. Baraka*, No. 25-mj-11131 (D.N.J.). The mayor has since sued, alleging he was arrested and prosecuted without probable cause and defamed. *Baraka v. Habba et al.*, No. 25-cv-6846 (D.N.J.)

## STATEMENT OF ISSUES

McIver stands charged with two felony counts and one misdemeanor count of assaulting and impeding federal law enforcement officers while they

were performing their duties. A73–78. Those charges arose from McIver's attempts to prevent those officers from arresting Newark's mayor during a protest outside an immigration detention center in Newark and her pushing push aside an officer while re-entering the facility. Having unsuccessfully sought dismissal of her indictment by the District Court (Hon. Jamel K. Semper, U.S.D.J.), McIver's opening brief presents these issues:

1.      Does the Speech or Debate Clause immunize violent acts?

2.      Are members of Congress otherwise immune when they engage in violent acts?

3.      Can McIver appeal the rejection of her Targeting claims, despite controlling precedent that neither the collateral order doctrine nor pendent appellate jurisdiction applies to them, and did the District Court properly deny those claims and McIver's related request for discovery in any event where:

   a.      McIver proffered no evidence that similarly situated politicians had not been investigated and prosecuted, and the comparators she did identify had been investigated and prosecuted; and

   b.      there was no basis to apply a presumption of prosecutorial vindictiveness and no credible evidence that the prosecutors who charged McIver did so because of animus against her?

## STATEMENT OF CASE

***The events at Delaney Hall.*** The Government accepts as not clearly erroneous for purposes of this appeal the District Court's aggregate factual findings regarding the events leading to this prosecution. A6–10, 19–23, 26–27,

49–51, 53–55. In a nutshell, on May 9, 2025, McIver, a Member of the House of Representatives, and two other, more senior Members of the House (Congresswoman Bonnie Waston Coleman and Congressman Robert Menendez Jr.) made an unannounced inspection visit to Delaney Hall, an immigration detention facility in Newark, New Jersey. A6, 50. After entering the facility through the front gate, they waited for quite some time inside Delaney Hall's administrative office to conduct their inspection. A7.

Meanwhile, approximately forty protesters, spectators and media members amassed outside the security gate, along with Newark's mayor and his security detail. A7. A guard allowed the mayor and his security detail through the gate. A7. Once inside the secure perimeter, the mayor and his security detail waited for the Representatives. A7. After a while, several Department of Homeland Security (DHS) and Immigration and Customs Enforcement (ICE) agents arrived at Delaney Hall. A7.

Victim 1 (V-1), accompanied by several ICE and DHS agents, approached the mayor to tell him he couldn't be inside the facility and that he would be arrested if he didn't leave. A7. The Representatives exited the administrative office and joined the conversation. A8.

V-1 told the group that the Representatives had the right to be there but the mayor didn't. A8. McIver and her colleagues countered that they had been waiting for more than an hour to begin their inspection and that they believed DHS officials were responsible for that delay. A8. Moments later, V-1 made his first attempt to arrest the mayor. A8. McIver responded "You're not

– 3 –

arresting him, hell no, hell no." A8. Meanwhile, protesters were yelling expletives at V-1, including "You let him in you piece of shit!" A8.

The mayor and his security detail left through the security gate, remaining in the public parking lot with the protesters. A8. After one of her Congressional colleagues assured the mayor that "we will be your eyes and your ears," McIver and the other two Representatives headed back to the administrative office with several DHS agents. A8.

Moments later, V-1 assembled DHS agents near the security gate, informed them the Deputy Attorney General had authorized the mayor's arrest, and instructed them to switch on their body worn cameras. A8. McIver and the other Representatives reversed their course, rushed through the security gate past V-1, and approached the mayor and his security detail. A8.

Someone yelled out "Circle the Mayor!" Heeding that command, McIver, the other two Representatives and protesters encircled the mayor to prevent his arrest. A9. As the agents pushed their way through the crowd, McIver placed herself between V-1 and the mayor. A9.

As V-1 attempted to effectuate the arrest, McIver told the surrounding agents "you're touching a federal official" and repeatedly said "don't touch us." A9. McIver then wedged herself between V-1 and the mayor, during which she physically contacted V-1. A9; *see* A75, ¶¶ 12–13 (alleging that McIver "placed her arms around the mayor" to "thwart the arrest," "slammed her forearm into the body of V-1" and "tried to restrain V-1 by forcibly grabbing him").

Once V-1 handcuffed the mayor, he led the mayor toward the security gate through the "compressed group of protestors who had surrounded him moments earlier." A9. DHS agents had to force their way to the security gate "by pushing away hostile protestors" while being called "fucking Nazis," "fascists" and "New Jersey's Gestapo." A9 & n.8. Two of the agents shielded Congresswoman Watson Coleman from the crowd's shoving. A9–10.

V-1 got the handcuffed mayor through the security gate, which several agents had surrounded to keep secure. A10. Following behind, McIver shoved Victim 2 (V-2), an ICE officer, out of her way, who had his back to her. A50 & n.3; A54. Other protestors pushed other agents, and one agent shoved McIver; she shoved him back. A10. Congressman Menendez then wrapped his arms around McIver and pulled her through the security gate. A50–51.

The three Representatives then conducted their inspection. A51. Meanwhile, the mayor was taken into custody, processed, charged with trespassing and, after an initial appearance, released on bail. A6; *see Baraka*, *supra*, No. 25-mj-11131. That charge was later dismissed. A6.

***This prosecution and these appeals.*** Ten days after the events at Delaney Hall, the Government charged McIver by complaint with two felony counts of assaulting, resisting and impeding two federal law enforcement agents while they were performing their official duties, in violation of 18 U.S.C. § 111(a)(1). A65–72. A substantial affidavit accompanied the complaint, which included stills from video footage of McIver's conduct. A68–72.

Three weeks later, a federal grand jury sitting in Newark returned a three-count indictment against McIver. A73–79. Counts One and Two reprised the felony § 111(a)(1) counts in the complaint and concerned the same victims. A73–77. Count Three, on the other hand, charged McIver with only a misdemeanor violation of § 111(a)(1), predicated upon her interference with multiple federal agents while at Delaney Hall. A78. The indictment makes only passing references to McIver's entitlement to enter that facility as "congressional oversight[.]"A73, ¶ 2; *see* A75, ¶ 9.

McIver filed several motions on August 15, 2025, only two of which bear on this appeal. In the first, which she called a "Motion to Dismiss Based on Legislative Immunity," McIver contended that both the Speech or Debate Clause and a separation-of-powers-based immunity akin to the President's meant she couldn't be prosecuted. DE19. In the second, McIver asserted her Targeting claims required dismissal or at the least discovery. DE20.

After voluminous briefing and oral argument, DE26–27, 30, 32, 37, the District Court denied McIver's Targeting motion and her Legislative Immunity motion as to Counts One and Three, but reserved on Count Two and ordered supplemental briefing, DE44–45; A3–45. After considering that supplemental briefing, DE51–52, the District Court denied the balance of the Legislative Immunity motion, DE63–64; A48–56.

McIver filed timely notices of appeal from both orders. DE60, 67. After this Court consolidated the appeals for briefing and disposition, Doc. 11, the Government moved to dismiss McIver's first appeal (No. 25-3573) to the

extent she was challenging the denial of her Targeting motion, Doc. 13. Following full briefing on that motion, Docs. 15–16, the motions panel referred it to the merits panel, Doc. 17.

## SUMMARY OF ARGUMENT

Members of Congress have many privileges. But assaulting federal agents who are trying to arrest someone isn't one of them. Although McIver contends the Constitution forbids her prosecution for engaging in that kind of conduct, she's wrong in every respect.

*First*, the Speech or Debate Clause doesn't bar McIver's prosecution. This isn't a close call. The inquiry on a motion to dismiss like McIver's is whether proof of legislative acts is "necessary" to make out a prima facie violation of the charged statutes. That turns on the specific conduct being "questioned"—not whether the defendant was generally engaged in legislative activity when that conduct occurred. To warrant dismissal under the Clause, the defendant must prove that the indictment's allegations are predicated on legislative acts.

McIver did not and cannot meet her burden. Despite all the ink she and her amici spill, they haven't cited a single case holding that the Speech or Debate Clause's protections extend to violent acts like the ones McIver is charged with committing. As for McIver's contentions that she will have to introduce evidence of her legislative acts to provide necessary context and rebut the Government's proofs, controlling precedent forecloses those grounds as a basis for dismissing her indictment.

*Second*, McIver's demand for an even broader form of immunity has no support in the text of Article I or controlling precedent. The only immunity from prosecution McIver has is what the Framers gave her in the Speech or Debate Clause. No court has extended that immunity to violent acts. This Court shouldn't be the first.

*Third*, this Court lacks jurisdiction to consider McIver's appeal from the denial of her Targeting motion. Neither the collateral order doctrine nor pendent appellate jurisdiction applies to the claims McIver presented in that motion. And the District Court properly rejected them in any event. The only comparators McIver offered for her selective prosecution and enforcement claims are the January 6 defendants. But the Government investigated and prosecuted all of them vigorously; the Government convicted many of them; and many of them served substantial time in pretrial or posttrial detention before receiving amnesty from the President. So the January 6 defendants cannot count as similarly situated persons who weren't prosecuted, a foundational requirement for a selective prosecution claim. As for McIver's vindictive prosecution claim, she proffered no evidence that the prosecutors who actually made the decision to charge her did so because of their animus or someone else's. And given McIver's failure to offer such evidence, the District Court properly rejected her request for fishing-expedition discovery.

Accordingly, this Court should dismiss part of McIver's appeals and otherwise affirm the interlocutory orders rejecting her claims.

ARGUMENT

## I.    The Speech or Debate Clause Doesn't Apply to Acts of Violence.

***Standard of review***: *de novo* for "the District Court's legal conclusions"; "clear error" for "its factual determinations." *United States v. James*, 888 F.3d 42, 44 (3d Cir. 2018).

The Speech or Debate Clause doesn't immunize Members of Congress who engage in violent or forcefully obstructive acts, full stop. McIver's arguments to the contrary fly in the face of the text of the Clause, decades of Supreme Court precedent interpreting it, and simple common sense.

Under Article I, Section 6 of the Constitution, "[t]he Senators and Representatives .... shall in all Cases, except Treason, Felony and Breach of the Peace, be privileged from Arrest during their Attendance at the Session of their respective Houses, and in going to and returning from the same; *and for any Speech or Debate in either House, they shall not be questioned in any other Place*." U.S. Const., art. I, § 6, cl. 1 (emphasis added). The italicized language is the Speech or Debate Clause.

That Clause permits a prosecution of a Member of Congress so long as it doesn't "draw in question the legislative acts of the defendant member of Congress or his motives for performing them." *United States v. Johnson*, 383 U.S. 169, 185 (1966). But for the Speech or Debate Clause to bar a prosecution, the charged conduct must be "integral" to the "deliberative and communicative processes by which Members participate in committee and House proceedings with respect to the consideration and passage or rejection of proposed legislation or with respect to other matters which the Constitution

places within the jurisdiction of either House." *Gravel v. United States*, 408 U.S. 606, 625 (1972).

That won't be the case for much of what a Member does. "Legislative acts are not all-encompassing." *Id.* The Clause doesn't apply to "activities that are casually or incidentally related to legislative affairs but not a part of the legislative process itself." *United States v. Brewster*, 408 U.S. 501, 528 (1972). That's because "there are few activities in which a legislator engages that he would be unable somehow to 'relate' to the legislative process." *Id.* at 516.

Furthermore, a legislator cannot rest on her own characterization of an act as legislative. It must be legislative in fact. *United States v. Menendez*, 831 F.3d 155, 172 (3d Cir. 2016) ("[T]he way [the legislator] chooses to characterize his actions does not resolve the Speech-or-Debate-Clause question."). "[B]ecause the privilege 'was designed to preserve legislative independence, not supremacy,' invocations of it that go 'beyond what is needed to protect legislative independence' must be 'closely scrutinized.'" *Id.* at 165 (quoting *Hutchinson v. Proxmire*, 443 U.S. 111, 126–27 (1979)).

Moreover, at the motion to dismiss stage, the Speech or Debate Clause inquiry turns on the theory of liability and the elements of the offenses charged. If "nothing in the indictment requires the Government to prove any legislative acts at trial," then the case must proceed to trial. *United States v. James*, 888 F.3d 42, 44 (3d Cir. 2018).[1] Even if an indictment alleges conduct

---

[1] *James* addressed "the meaning of the legislative immunity provision for the Virgin Islands," which "contains language similar to" the Speech or Debate Clause. 888 F.3d at 45–46.

involving legislative acts, dismissal of a charge is appropriate only where the charge's essential elements turn on proof of a legislative act. For example, this Court has held that, even if two of several overt acts in a conspiracy charge alleged protected legislative acts, dismissal would not be appropriate because the other overt act allegations did not involve legislative acts. *See United States v. McDade*, 28 F.3d 283 (3d Cir. 1994) (Alito, J.).

"The question is whether it is necessary to inquire into how [the defendant] spoke, how he debated, how he voted, or anything he did in the chamber or in committee in order to make out a violation of" the statutes in question. *Brewster*, 408 U.S. at 526. If proof of legislative acts is not "necessary for the Government to make out a prima facie case," the indictment does not violate the Speech or Debate Clause. *Id.* at 525.

That's true even if the defendant contends the indictment contemplates introduction of legislative-acts evidence. So long as the Government can prove the charges without introducing that evidence—even if that would make its case more difficult—the case should proceed to trial. *Id.* at 527–28. But the Government doesn't have to demonstrate how it will prove its case without using evidence of legislative acts. Rather, the defendant must prove "by a preponderance of the evidence" that the indictment's allegations are predicated on legislative acts. *Menendez*, 831 F.3d at 165.

McIver did not and cannot meet her burden. She and two of her amici devote more than 65 pages of briefing to her Speech or Debate Clause claim. DB3–5, 7–9, 20–47; AAB5–19; FMCAB1–6, 8–18. Yet they haven't cited a

single case holding that the Clause's protections extend to violent acts. No wonder: It's the "*Speech* or *Debate*" Clause, not the "Speech, Debate or Conduct" Clause or the "Anything Goes" Clause. U.S. Const. art. I, § 6, cl. 1 (emphasis added). "[S]ome acts are so clearly non-legislative that" they *per se* fall outside the Speech or Debate Clause's ambit. *Menendez*, 831 F.3d at 166.

"Admittedly, the Speech or Debate Clause must be read broadly to effectuate its purpose of protecting the independence of the Legislative Branch," but the Clause does not "make Members of Congress super-citizens, immune from criminal responsibility." *Brewster*, 408 U.S. at 516. "The Speech or Debate Clause does not prohibit inquiry into illegal conduct simply because it has *some nexus* to legislative functions." *Id.* at 528 (emphasis added). For that reason, the Court's Speech or Debate Clause decisions have been "careful not to extend the scope of" the Clause's "protection further than its purposes require." *Forrester v. White*, 484 U.S. 219, 224 (1988).

Thus, the Supreme Court "has rejected a reading of the Speech or Debate Clause that is so broad as to cover everything "'related to the due functioning of the legislative process.'" *Youngblood*, 352 F.3d at 840 (quoting *Brewster*, 408 U.S. at 513). "Immunity does not extend to acts that are 'casually or incidentally related to legislative affairs but not a part of the legislative process itself.'" *Id.* (quoting *Brewster*, 408 U.S. at 528). "And for sure legislative immunity does not extend to accepting bribes and disseminating legislative materials that are classified or libelous." *Id.* (cleaned up); *see Doe v. McMillan*, 412 U.S. 306, 314–15 (1973) (disseminating libelous materials); *Gravel*, 408

U.S. at 625–26 (disseminating classified materials); *Brewster*, 408 U.S. at 526 (accepting bribes).

To assist in determining what types of actions are "an integral part of the deliberative and communicative processes" and therefore "protected by the Speech or Debate Clause," this Court uses a "two-step framework." *Menendez*, 831 F.3d at 165–66 (cleaned up). The first step is to "look to the form of the act to determine whether it is inherently legislative or non-legislative." *Id.* at 166. If "an act is neither manifestly legislative nor clearly non-legislative, then it is ambiguously legislative," and the court must proceed to the second step. *Id.* That step requires the court to "consider the content, purpose, and motive of the act to assess its legislative or non-legislative character." *Id.*

"Applying the first *Menendez* step to" this case, the "conduct for which [McIver] has been criminally charged is inherently non-legislative." *James*, 888 F.3d at 46. She is charged with forcefully assaulting, resisting, impeding and interfering with federal law enforcement agents while they were doing their jobs. A73–78. As with the conversion offense in *James*, "[t]his is not a close call." 888 F.3d at 46. "[S]ome acts are so clearly non-legislative that no inquiry into their content or underlying motivation or purpose is needed to classify them." *Menendez*, 831 F.3d at 166; *see, e.g.*, *Brewster*, 408 U.S. at 526 ("Taking a bribe is, obviously, no part of the legislative process or function; it is not a legislative act."). "Even if" those acts "relate to protected legislative activity, they are not protected." *Menendez*, 831 F.3d at 166. Assaulting a federal officer, even while conducting "oversight," fits that description to a T.

The Speech or Debate Clause "provides no protection for *criminal conduct threatening the security of the person or property of others*," even if "performed at the direction of" a member of Congress "in preparation for or in execution of a legislative act[.]" *Gravel*, 408 U.S. at 622 (emphasis added). So the Clause necessarily "provides no protection" for an assault that a member of Congress personally commits while executing that legislative act. *Id.*; *see McMillan*, 412 U.S. at 327 (Douglas, J., concurring) ("assaults with fists, clubs or guns" are "outside the protective ambit of the Speech or Debate Clause"); *Brewster* 408 U.S. at 560–61 (White, J., dissenting) (recognizing that in a prosecution for "assault, the manner in which a Congressman performed his legislative tasks is quite irrelevant to either prosecution" or "defense").[2]

That's no less true when the assault occurs while the member of Congress is doing something that might qualify as "manifestly legislative" under *Menendez*. If, for example, in the midst of a floor debate over proposed legislation, one member offers a bribe to another, that act is not protected by the Speech or Debate Clause. *See United States v. Myers*, 692 F.2d 823, 860 (2d Cir. 1982) (rejecting contention that the Clause didn't apply to "whispered

---

[2] *See Romero Barceló v. Hernández Agosto*, 15 P.R. Offic. Trans. 487, 510 (P.R. 1984) ("[C]rimes such as assault and battery or armed robbery should be beyond the scope of the privilege, even if fortuitously committed within the walls of the Capitol. Such crimes are not legislative functions, and their commission in no way supports the system of separate powers."); Robert J. Reinstein & Harvey A. Silverglate, *Legislative Privilege and the Separation of Powers*, 86 Harv. L. Rev. 1113, 1146 (1973) (same); *cf.* Michael J. Gerhardt, *Dissent in the Senate*, 127 Yale L.J. Forum 728, 754 (2018) ("neither the First Amendment nor the Speech or Debate Clause condones violence").

solicitations" on the House floor to accept a bribe). That's because "accepting bribes in exchange for taking official action" is a manifestly non-legislative act even when it "relate[s] to protected legislative activity[.]" *Menendez*, 831 F.3d at 166; *cf. id.* ("claims of 'oversight' do not automatically result in Speech or Debate protection"). So is assaulting someone while otherwise engaged in legislative activity. *See James*, 888 F.3d at 51 ("[T]he Government's case relies on establishing that James' actions *diverged* from any genuine legislative act that James may wish to argue he engaged in.").

After all, "[i]n no case has" the Supreme Court "ever treated the Clause as protecting all conduct relating to the legislative process." *Brewster*, 408 U.S. at 515. To the contrary, the Court has "limited" the Speech or Debate Clause "to an act which was clearly a part of the legislative process—the due functioning of the process." *Id.* at 515–16. McIver's "broader interpretation of the privilege draws essentially on the flavor of the rhetoric and the sweep of the language used by courts, not on the precise words used in any prior case, and surely not on the sense of those cases, fairly read." *Id.* at 516. "It can hardly be thought that the Speech or Debate Clause totally protects what" the preceding Arrest Clause "has plainly left open to prosecution, *i.e.*, all criminal acts." *Id.* at 521; *see* U.S. Const. art. I, § 6, cl. 1 (excepting "Felony and Breach of the Peace" from the Arrest Clause's protection).

McIver's other arguments fall into two categories: (1) legislative-acts evidence will provide necessary context; and (2) she will need to introduce legislative-acts evidence in her defense. DB4–5, 30–37. Those arguments don't

provide a basis for dismissing the indictment. *Brewster* forecloses arguments that the indictment is invalid because legislative-acts evidence will provide necessary context. 408 U.S. at 528. And defenses have no bearing on the Speech or Debate Clause inquiry. *McDade*, 28 F.3d at 294–95; *see United States v. Renzi*, 769 F.3d 731, 747 (9th Cir. 2014).

In *Brewster*, the dissent argued that the indictment was invalid because it "contemplate[d]" proof of legislative acts. 408 U.S. at 553–54 (White, J., dissenting). The majority rejected that argument because the Government could make out a prima facie case without that evidence, even if it would be more difficult to do so. *Id.* at 528. Similarly, here, even if it might be more difficult for the Government to tell a compelling story to the jury without legislative-acts evidence (*e.g.*, why McIver was on site that day, DB31–33), that doesn't mean the Speech or Debate Clause forbids the Government from prosecuting. She isn't being prosecuted for her legislative acts, after all; she's being prosecuted for assaulting and impeding Federal law enforcement agents.

Furthermore, the elements of the charged § 111(a) offenses don't require the Government to prove *why* McIver was at Delaney Hall that day. In order to violate § 111(a), "a defendant must: (1) forcibly; (2) assault, resist, oppose, impede, intimidate, or interfere with; (3) a designated federal officer; (4) while engaged in or on account of the performance of official duties. In addition, the defendant must have: (5) the intent to do the acts specified in the subsection." *United States v. Arrington*, 309 F.3d 40, 44 (D.C. Cir. 2002) (cleaned up). "The adverb 'forcibly' in the first element of the offense modifies each of the

prohibited acts specified in the second element: that is, a defendant does not violate the statute unless he forcibly assaults or forcibly resists or forcibly opposes, etc." *Id.* The Government can prove each of those elements without having to explain why McIver was at Delaney Hall.

Beyond that, the Speech or Debate Clause doesn't cover much of the contextual evidence that McIver identifies. For example, her presence at Delaney Hall isn't protected. *See McDade*, 28 F.3d at 299–99 (fact of Member's travel not protected even if travel is for purpose of legislative acts); *United States v. Biaggi*, 853 F.2d 89, 104 (2d Cir. 1988) (same). The mayor's conduct isn't protected either, nor is the federal law enforcement agents' performance of official duties. They're not members of Congress. The "Speech or Debate Clause" is "confined to federal legislators." *United States v. Gillock*, 445 U.S. 360, 374 (1980).

As for McIver's defenses, such as her purported justifications for her conduct and her rebuttal to the Government's *mens rea* evidence (DB33–35), *McDade* rejected the argument "that the indictment in" that "case violate[d] the Speech or Debate Clause because it" would "force" the defendant "to introduce evidence of legislative acts in order to refute the charges against him." 28 F.3d at 294. That argument has no support in "the text of the Speech or Debate Clause[.]" *Id.* "The Clause protects a member of Congress from being 'questioned,' and a member is not 'questioned' when he or she chooses to offer rebuttal evidence of legislative acts." *Id.* Furthermore, "implicit in the type of bribery prosecution sanctioned in *Brewster* is the very sort of tactical

– 17 –

pressure" for the defendant to respond "with proof of his or her legislative acts." *Id.*

So if McIver "offers evidence of [her] own legislative acts at trial," she will do so at her own peril. *Renzi*, 769 F.3d at 747. The Government will be "entitled to introduce rebuttal evidence narrowly confined to the same legislative acts"; "such rebuttal evidence does not constitute questioning the member of Congress in violation of the Clause." *Id.* That will be true even if she "elicit[s] legislative act testimony from other witnesses rather than testifying" herself "at trial" *Id.* at 747 n.23. Doing so won't "shield [her] from the government's introduction of rebuttal evidence any more than a congressman who testifies about his own legislative acts is shielded from cross-examination regarding those acts." *Id.*; *see McDade*, 28 F.3d at 294–95. Nor will it matter if McIver elicits legislative act testimony by cross-examining Government witnesses. *See Renzi*, 769 F.3d at 748 ("Renzi opened the door to the limited rebuttal testimony adduced from Keene at trial by cross-examining Aries on the same issue").

Because assaults never fall within the Speech or Debate Clause's protective ambit, this Court need not address whether McIver's conduct is ambiguously legislative, triggering the second step of the *Menendez* inquiry. Suffice it to say, though, that McIver's arguments on that score ignore her concessions below. For example, she contends the District Court erred by considering in isolation the 68 seconds of conduct in which the assaults occurred. DB4. But she conceded below that the court could "look at the

– 18 –

individual acts and separate them from the initial intent if indeed those acts are not connected to the legislative activity[.]" A199 ("So, the answer is, yes, you can; but in this particular case there are reasons why you shouldn't."). She also conceded that "protected legislative activities" under the Speech or Debate Clause don't "include the right to commit an assault." A216.

The District Court chose to consider the "content, purpose and motive" of McIver's alleged conduct "to assess the legislative nature of the acts at issue." A18. Although that *Menendez* step-two analysis was unnecessary for the reasons just explained, McIver's attacks on that analysis (DB29–30, 38–44) fare no better. The District Court scrutinized the videos provided by the parties and concluded that McIver wasn't "acting pursuant to her congressional oversight authority when she exited the Security Gate and made herself an active participant in a scrum in a public parking lot." A22 (cleaned up). And the court properly held that "[i]mpeding an arrest, whether lawful or unlawful, goes beyond any reasonable definition of oversight and, accordingly, exceeds the safe harbor of legislative immunity." A23.

The District Court also properly distinguished between activities protected by the Speech or Debate Clause and those that are not:

> Defendant's actions in Count One are wholly disconnected from the oversight she and the Representatives later conducted when touring the facility, where they engaged in protected fact-finding related to federal immigration policy.

*Id.* That conclusion flows logically from *Gravel*'s holding that the Speech or Debate Clause "provides no protection for *criminal conduct threatening the*

– 19 –

*security of the person or property of others*," even if done "in preparation for or in execution of a legislative act." 408 U.S. at 622 (emphasis added).

McIver nonetheless portrays her physical assault of a federal law enforcement officer described in Count Two as an effort to prevent what she labels as an "impairment of her oversight inspection." DB40. But that's wordplay. Under McIver's formulation of Speech or Debate Clause immunity, she could have struck with a bat a federal official who intentionally obstructed her entry into the facility and claimed later she was removing an impairment to her oversight inspection. *Gravel* shows that's just plain wrong.

In sum, "nothing in the indictment requires the Government to prove any legislative acts at trial." *James*, 888 F.3d at 49. Rather, as in *James*, the indictment here "relies upon how" McIver's "alleged conduct *diverged* from what" she "purported to be doing officially." *Id.* So her "conduct as alleged in the indictment is inherently non-legislative in nature." *Id.* at 51. Because the indictment doesn't "rely upon protected legislative acts, it does not violate" the Speech or Debate Clause. *Id.* at 49.

## II. There Is No Basis for the Broader Immunity That McIver Seeks Under the Separation-of-Powers, Which Wouldn't Cover Her Charges in Any Event.

*Standard of review*: same as Point I, *supra*.

McIver's next claim is even more dubious than her first. She invites this Court to fashion a new form of immunity that would cover her conduct. This Court should reject that invitation.

The "Supreme Court has instructed that absolute immunity for members of Congress does not extend beyond the scope of the Speech or Debate Clause." *Walker v. Jones*, 733 F.2d 923, 932 (D.C. Cir. 1984); *see Forrester*, 484 U.S. at 224; *Davis v. Passman*, 442 U.S. 228, 235 n.11 (1979). "Although the separation-of-powers doctrine justifies a broader privilege for Congressmen than for state legislators in criminal actions," *Supreme Court of Virgina v. Consumers Union, Inc.*, 446 U.S. 719, 733 (1980), that privilege isn't absolute. For example, "a Member of Congress would not be" immune "from prosecution for acts" that violate "the Hobbs Act, 18 U.S.C. § 1951, and RICO, 18 U.S.C. § 1962[.]" *Gillock*, 445 U.S. at 373 n.12.

McIver's invocation of *Coffin v. Coffin*, 4 Mass. 1 (1808), DB46, falls flatter still. There, "the state equivalent of the Speech or Debate Clause was held to be inapplicable to a legislator who was acting outside of his official duties." *Brewster*, 408 U.S. at 516 n.10. And Chief Justice Parson's opinion for the Massachusetts Supreme Judicial Court confirms that engaging in violence has never been viewed as part of a legislator's "official duties."

Consider the rhetorical questions that opinion posed about one legislator's "cruelly beat[ing]" another "for words spoken in the house in the execution of his duty": "[C]annot the member prosecute him at law for damages? And may not the grand jury indict him for a breach of the peace?" *Coffin*, 4 Mass. at 35. Or consider this question during the oral argument: "Suppose ... one member should assault or beat another in the presence of the house; would he not be answerable in an action, or on an indictment, in a

court of law?" *Id.* at 11. The Attorney General answered "Unquestionably he would. For it is the freedom of deliberation, speech, and debate, only, and not of assaulting and beating, that is secured by the constitution." *Id.* That answer was correct more than two centuries ago, and it remains correct now.

Nor does *Trump v. United States*, 603 U.S. 593 (2024), help McIver. DB5, 45–47. The Court there emphasized that "[t]he President enjoys no immunity for his unofficial acts, and not everything the President does is official. The President is not above the law." *Id.* at 642. So, too, with Members of Congress. Their legislative immunity, whether grounded in the Speech or Debate Clause or in the Constitution's separation of powers, does not make them "super-citizens, immune from criminal responsibility." *Brewster*, 408 U.S. at 516; *accord Menendez*, 831 F.3d at 165.

McIver also ignores the unique role the President plays in our Republic. "Like everyone else, the President is subject to prosecution in his unofficial capacity." *Trump*, 603 U.S. at 639. "But unlike anyone else, the President is a branch of government, and the Constitution vests in him sweeping powers and duties." *Id.* at 639–40. "Accounting for that reality—and ensuring that the President may exercise those powers forcefully, as the Framers anticipated he would—does not place him above the law; it preserves the basic structure of the Constitution from which that law derives." *Id.* at 640.

In short, the only immunity from prosecution McIver has is what the Framers gave her in the Speech or Debate Clause. No court has extended that immunity to violent acts. This Court shouldn't be the first.

– 22 –

### III. This Court Lacks Jurisdiction Over McIver's Targeting Claims, and the District Court Properly Rejected Them in Any Event.

*Standard of review*: This Court has "plenary" authority "to determine the extent" of its own jurisdiction. *Papotto v. Hartford Life Ins. Co.*, 731 F.3d 265, 269 (3d Cir. 2013). Otherwise, this Court reviews for clear error the district court's factual findings; reviews *de novo* the court's application of legal principles; and reviews for abuse of discretion the denial of discovery. *See United States v. Taylor*, 686 F.3d 182, 197 (3d Cir. 2012).

McIver's Targeting claims provide no basis for reversing the District Court either. This Court has no jurisdiction to entertain those claims at this stage. And the claims fail in any event.

#### A. This Court Should Dismiss for Lack of Appellate Jurisdiction McIver's Appeal from the Denial of Her Targeting Motion.

The motions panel referred the Government's motion to dismiss part of these consolidated appeals "to the merits panel for consideration after briefing." Doc. 17 at 1. The panel added that its "order does *not* represent a finding of jurisdiction in this matter." *Id.* Finally, the motions panel instructed the parties to "address jurisdiction in their briefs." *Id.*

But McIver *didn't* include in her principal brief any argument explaining the jurisdictional basis for her interlocutory appeal from the denial of the Targeting motion. Instead, McIver merely (1) asserts that the denial "is an appealable collateral order" or should be reviewed "under the doctrine of pendent jurisdiction" and (2) incorporates her 5,200-word opposition to the Government's motion to dismiss. DB1.

That's "highly inappropriate." *Prudential Ins. Co. v. Sipula*, 776 F.2d 157, 161 n.1 (9th Cir. 1985). By doing so, McIver has evaded the word limit on

– 23 –

principal briefs. *Id.* Her failure to brief jurisdiction adequately in her principal brief justifies dismissing her Targeting claims on appeal. *See* Fed. R. App. P. 3(a)(2); *cf. United States v. Bales*, 813 F.2d 1289, 1297 (4th Cir. 1987) ("arguments incorporated by reference need not be considered on appeal"). McIver is wrong about the collateral order doctrine and pendent appellate jurisdiction, in any event.

1.     The denial of a motion to dismiss an indictment because of prosecutorial vindictiveness cannot be appealed interlocutorily. *See United States v. Hollywood Motor Car Co.*, 458 U.S. 263, 267–70 (1982) (per curiam). Such a claim "particularly fails the third part of the test for" appeals under the collateral order doctrine: "that the claim be effectively unreviewable on appeal from a final judgment." *Id.* at 267 (cleaned up). That "holding reflects the crucial distinction between a right not to be tried and a right whose remedy requires the dismissal of charges." *Id.* at 269. "The former necessarily falls into the category of rights that can be enjoyed only if vindicated prior to trial. The latter does not." *Id.*

Just like the prosecutorial vindictiveness claim in *Hollywood Motor Car*, the rights McIver asserted in the Targeting motion are "simply not one[s] that must be upheld prior to trial if" they are "to be enjoyed at all." *Id.* at 270; *see United States v. Butterworth*, 693 F.2d 99, 101 (9th Cir. 1982) ("Selective prosecution claims similarly are not premised upon the right not to be tried."). "To afford" McIver "the interlocutory relief" she "seeks in the name of" legislative "independence would have the effect of giving" her "more

– 24 –

protection tha[n] ordinary citizens raising similar claims enjoy." *United States v. Claiborne*, 727 F.2d 842, 849 (9th Cir. 1984) (rejecting federal judge's attempt to raise on interlocutory appeal "what is essentially a vindictive or selective prosecution claim").

Nor can McIver circumvent *Hollywood Motor Car* by invoking a supposed First Amendment "'right not to be tried.'" *United States v. Ambort*, 193 F.3d 1169, 1171 (10th Cir. 1999) (distinguishing *United States v. P.H.E., Inc.,* 965 F.2d 848 (10th Cir. 1992)). "Defendants have the burden of establishing the legal and factual basis for such a right." *Ambort*, 193 F.3d at 1171. That's because "§ 1291 requires courts of appeals to view claims of a 'right not to be tried' with skepticism, if not a jaundiced eye." *Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 873 (1994).

"A right not to be tried in the sense relevant to the *Cohen* exception" usually "rests upon an explicit statutory or constitutional guarantee that trial will not occur"—such as in the Double Jeopardy Clause or the Speech or Debate Clause. *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 801 (1989). "Nowhere in the Constitution or laws of the United States is there an 'explicit statutory or constitutional guarantee' of a right not to be tried for ordinary speech, even if otherwise protected by the First Amendment." *Ambort*, 193 F.3d at 1171.

Only one case—*P.H.E., Inc.*—has allowed the denial of a retaliation claim akin to McIver's to be appealed under the collateral order doctrine in a criminal case. But the very Circuit that issued that divided panel opinion has

"long recognized" *P.H.E., Inc.* "is perhaps unique, permitting as it did an interlocutory appeal only in light of" an extraordinary "confluence of factors." *United States v. Wampler*, 624 F.3d 1330, 1340 (10th Cir. 2010) (Gorsuch, J.) (cleaned up). The "government had previously pursued multiple prosecutions against" that defendant. *Id.* "[S]ubstantial evidence" showed those "prosecutions had been undertaken in bad faith[.]" *Id.* And their "apparent purpose and effect" was "to act as a prior restraint on the defendant's protected First Amendment publishing activities." *Id.* "All of these conditions" were "essential predicates to the" interlocutory review that *P.H.E., Inc.* had allowed. *Wampler*, 624 F.3d at 1340. "None, however, is present in this case." *Id.*

Beyond that, the *P.H.E., Inc.* dissent maintained the collateral order doctrine shouldn't apply even in those extraordinary circumstances. *See P.H.E., Inc.*, 965 F.2d at 861–62 (McWilliams, J., dissenting). That dissent has carried the day in the Tenth Circuit, with good reason. *See, e.g.*, *Wampler*, 624 F.3d at 1340 (citing cases). The Supreme Court eschews "a case-by-case approach to deciding whether an order is sufficiently collateral" to justify an interlocutory appeal. *Cunningham v. Hamilton County, Ohio*, 527 U.S. 198, 206 (1999).

Moreover, in *Butterworth*, the defendants tried to appeal an interlocutory order denying their motions to dismiss their indictments on the grounds that they had been targeted for prosecution solely because of their union activities in violation of their First Amendment rights. 693 F.2d at 100. Relying on *Hollywood Motor Car*, the Ninth Circuit dismissed the appeal. *Butterworth*, 693 F.2d at 101. Thus, "to the extent" McIver "wish[es] to argue that a First

Amendment defense precludes" her "prosecution," this Court should "hold it is a matter" this Court "may resolve after—but only after—a final judgment." *Wampler*, 624 F.3d at 1340.

McIver cannot gainsay that the Government may prosecute those who assault federal law enforcement officers. "The right" she asserts "is merely to have the charges against [her] dismissed if" she demonstrates "the government impermissibly targeted [her] for prosecution because" she "exercised [her] First Amendment rights." *Butterworth*, 693 F.2d at 101. That right "may be vindicated in an appeal from the final judgment." *Id.*; *see Jarkesy v. SEC*, 803 F.3d 9, 27 (D.C. Cir. 2015) (the "general rule against interlocutory appeals encompasses selective-prosecution claims"; "courts of appeals address the matter only after a conviction").

The same goes for McIver's contentions that her prosecution violates the equal protection component of the Fifth Amendment's Due Process Clause and that she was entitled to discovery. "[B]oth discovery orders and equal protection challenges are appealable only after entry of final judgment." *United States v. Washington*, 869 F.3d 193, 222 (3d Cir. 2017).

**2.**     As for pendent appellate jurisdiction, *McDade* dooms McIver's contention that it applies here. In *McDade*, this Court held that it had "jurisdiction to review any of the district court's other rulings regarding the Speech or Debate Clause that satisfy all of the requirements of the collateral order doctrine." *Id.* at 288. But this Court also held that its jurisdiction "'extends no further,' recognizing the limits of the collateral order doctrine." *In*

– 27 –

*re Search of Elec. Comms.*, 802 F.3d 516, 524 (3d Cir. 2015) (quoting *McDade*, 28 F.3d at 288). Applying that principle, *McDade* held this Court "lack[ed] jurisdiction to review" on interlocutory appeal a statutory argument closely related to the defendant's Speech or Debate Clause arguments. 28 F.3d at 297.

Besides, pendent appellate jurisdiction should never apply to a defendant's interlocutory appeal in a criminal case. *See United States v. Wittig*, 575 F.3d. 1085, 1095 (10th Cir. 2009) (concluding that "we have no 'pendent' appellate jurisdiction" in an interlocutory double jeopardy appeal); *United States v. Ferguson*, 246 F.3d 129, 138 (2d Cir. 2001) ("[T]here is no pendent appellate jurisdiction in criminal cases."); *cf. United States v. Bergrin*, 682 F.3d 261, 277 n.20 (3d Cir. 2012) (acknowledging "a split in authority as to whether that doctrine applies in criminal cases" and that "we have not expressly employed it in that context").

The Supreme Court explained why in *Abney v. United States*, 431 U.S. 651 (1977). "[T]hat a defendant may seek immediate appellate review of a district court's rejection of his double jeopardy claim is based on the special considerations permeating claims of that nature which justify a departure from the normal rule of finality." *Id.* at 663. "Quite obviously, such considerations do not" automatically "encompass other claims presented to, and rejected by, the district court in passing on the accused's motion to dismiss." *Id.* "Rather, such claims are appealable if, and only if, they too fall within *Cohen*'s collateral-order exception to the final-judgment rule." *Id.* "Any other rule would encourage criminal defendants to seek review of" frivolous, but

– 28 –

appealable claims "in order to bring more serious, but otherwise nonappealable questions to the attention of the courts of appeals prior to conviction and sentence." *Id.*

Hewing to *Abney*, the Seventh Circuit has "limited" pendent appellate jurisdiction "to compelling situations in civil cases." *United States v. Schock*, 891 F.3d 334, 339 (7th Cir. 2018) (Easterbrook, J.). The same reasons that the Supreme Court has given "for a strict application of the collateral-order doctrine in criminal cases apply equally well to a request that we entertain pendent appellate jurisdiction." *Id.* at 339–40. Moreover, *Abney* "stated that legal defenses other than personal immunities could not be added to interlocutory criminal appeals." *Id.* at 340 (citing *Abney*, 431 U.S. at 662–63). *Abney* didn't "employ the phrase 'pendent appellate jurisdiction' but effectively foreclosed its use" by defendants "in criminal prosecutions" nonetheless. *Schock*, 891 F.3d at 340 (affirming "with respect to the Speech or Debate Clause"; dismissing "the appeal otherwise").

Likewise, although the District of Columbia Circuit considers this part of *Abney* "only dictum," that Circuit "think[s] it right to take it literally, at least as to defendants' attempted appeals." *United States v. Hsia*, 176 F.3d 517, 526 (D.C. Cir. 1999). "An even partly open door could enable defendants to achieve untoward delay by coupling extra claims with a weak interlocutory appeal, and thus would give them an incentive to raise weak claims before the trial court on issues allowing interlocutory appeals[.]" *Id.* at 526–27. So "even where the interlocutory appeal is brought by the government," the District of

– 29 –

Columbia Circuit could "see no reason to give the defendant a windfall opportunity to delay proceedings via cross-appeal." *Id.* (dismissing defendant's "cross-appeal for lack of jurisdiction").

*Menendez* doesn't compel this Court to hold otherwise. There, this Court stated (without explanation) that it had pendent appellate jurisdiction to review the defendant's Senate Rule-based separation-of-powers claim alongside his Speech or Debate Clause claim. *Menendez*, 831 F.3d at 164. *Menendez* neither discussed *Abney* nor considered whether pendent appellate jurisdiction is available in the criminal context. "[D]rive-by jurisdictional rulings of this sort … have no precedential effect." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 91 (1998); *see Arbaugh v. Y & H Corp.*, 546 U.S. 500, 511 (2006) (cautioning against reliance on "drive-by jurisdictional rulings" applying "less than meticulous" analysis of jurisdictional questions (cleaned up)).

Moreover, *Menendez* never addressed *McDade*'s holding that a defendant can't use an interlocutory appeal from an order denying a Speech or Debate Clause-based motion to challenge other rulings that don't "satisfy all of the requirements of the collateral order doctrine." 28 F.3d at 288. When this Court's "panel decisions conflict and" this "Court has not spoken en banc," the "earlier decision is generally the controlling authority." *United States v. Tann*, 577 F.3d 533, 541 (3d Cir. 2009). So even if *Menendez*'s assertion of pendent appellate jurisdiction were a considered holding, "it would nonetheless be trumped by the prior holding in" *McDade. See Goldman v. Citigroup Global Mkts. Inc.*, 834 F.3d 242, 253 (3d Cir. 2016).

Beyond that, *Menendez* declined to exercise pendent appellate jurisdiction over that defendant's First Amendment-based motion to dismiss his indictment. In urging this Court to review the denial of that motion, the defendant made the same kinds of judicial efficiency and separation-of-powers arguments that McIver made in opposing the Government's partial dismissal motion. *Compare* Doc. 15, *with* Doc. 16, Exh. A at 4–10 & Exh. B at 2–4. This Court nonetheless wouldn't consider those First Amendment claims. *Id.*, Exh. C at 2 (citing *Abney* and *McDade*). After all, the "doctrine of pendent jurisdiction is indisputably narrow and should be used sparingly." *Griswold v. Coventry First LLC*, 762 F.3d 264, 269 (3d Cir. 2014) (cleaned up).

### B.    McIver's Selective Prosecution and Enforcement Claims Fail on Their Merits.

The District Court correctly rejected McIver's selective prosecution and enforcement claims in any event. As the court found, McIver failed to identify anyone, let alone a public official, who engaged in conduct similar to hers but wasn't prosecuted. That dooms her claim.

"In our criminal justice system, the Government retains 'broad discretion' as to whom to prosecute." *Wayte v. United States*, 470 U.S. 598, 607 (1985) (quoting *United States v. Goodwin*, 457 U.S. 368, 380 n.11 (1982)). When probable cause exists, whether to prosecute is generally committed entirely to the prosecutor's discretion. *See Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978). This "broad discretion rests largely on the recognition that the decision to prosecute is particularly ill-suited to judicial review." *Wayte*, 470 U.S. at 607.

Prosecutorial discretion, however, is not "unfettered." *United States v. Batchelder*, 442 U.S. 114, 124–25 (1979). The charging decision must not run afoul of the rights and protections afforded by the United States Constitution. *Id.* at 125 ("Selectivity in the enforcement of criminal laws is, of course, subject to constitutional constraints."). The Equal Protection component of the Fifth Amendment's Due Process Clause protects against both selective prosecution and selective enforcement. *Washington*, 869 F.3d at 214.

Selective prosecution and selective enforcement claims "are generally evaluated under the same two-part test, which is derived from a line of seminal Supreme Court cases about the collision between equal protection principles and the criminal justice system." *Id.* Though "selective prosecution" and "selective enforcement" have been used interchangeably, "'[p]rosecution' refers to the actions of prosecutors (in their capacity as prosecutors) and 'enforcement' to the actions of law enforcement and those affiliated with law-enforcement personnel." *Id.*

Nevertheless, a "defendant challenging a criminal prosecution at either the law enforcement or prosecution inflection points must provide 'clear evidence'" of: (1) discriminatory effect; and (2) discriminatory intent or purpose. *Id.* The "standard for proving" both "is particularly demanding." *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 489 (1999). It requires "a criminal defendant to introduce clear evidence displacing the presumption that a prosecutor has acted lawfully." *Id.* (cleaned up); *see United States v. Taylor*, 686 F.3d 182, 197 (3d Cir. 2012). That "longstanding

presumption" that "a prosecutor has legitimate grounds for the actions he takes is one that" courts cannot "lightly disregard given" the Supreme Court's "position that judicial intrusion into executive discretion of such high order should be minimal[.]" *Hartman v. Moore*, 547 U.S. 250, 263 (2006).

Establishing the first prong, discriminatory effect, requires evidence that "persons similarly situated *have not* been prosecuted," arrested or otherwise investigated. *Taylor*, 686 F.3d at 197 (emphasis added); *see Washington*, 869 F.3d at 214 ("Meeting this standard generally requires evidence that similarly situated individuals of a differen[t] race or classification were not prosecuted, arrested, or otherwise investigated."). Meanwhile, discriminatory intent requires "show[ing] that the decision to prosecute" or enforce "was made on the basis of an unjustifiable standard, such as race, religion, or some other arbitrary factor, or that the prosecution was intended to prevent" the defendant's "exercise of a fundamental right." *United States v. Schoolcraft*, 879 F.2d 64, 68 (3d Cir. 1989). McIver has shown neither, let alone both.

"[M]embership in a political party is protected by the First Amendment, and the mere exercise of that right cannot be punished by means of selective prosecution." *United States v. Torquato*, 602 F.2d 564, 569 n.9 (3d Cir. 1979). Nor can a prosecution be based upon "the exercise of" other "protected statutory and constitutional rights," such as the defendant's protected "speech." *Wayte*, 470 U.S. at 608–09; *see Hartman*, 547 U.S. at 256 ("the First Amendment prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out").

But McIver has proffered no evidence, let alone "clear evidence," that Republican Members of Congress committed similar assaults but weren't investigated or charged. A188 (highlighting McIver's failure to come forward with such proof); *see Nixon v. United States*, 703 F. Supp. 538, 571 (S.D. Miss. 1988) (rejecting selective prosecution claim because the defendant "has not identified any other public official against whom there was strong evidence of criminal conduct similar to that in this case who was not prosecuted"). Nor has she shown that vocal supporters of the Administration's enforcement policies have committed similar assaults but weren't investigated or charged.[3]

Instead, McIver invokes the President's bestowal of amnesty upon everyone charged with (and in many cases convicted of) assaulting law enforcement officers at the Capitol on January 6, 2021. DB6, 17–19, 21, 48–52, 54–58 (relying on Proc. No. 10887, 90 Fed. Reg. 8331 (Jan. 20, 2025)). But those defendants are not "similarly situated individuals of a different" Equal Protection class who "were not *prosecuted, arrested, or otherwise investigated*" in

---

[3] McIver invokes *Harvard v. Cesnalis*, 973 F.3d 190 (3d Cir. 2020), for the proposition that "the comparator" does not have to "be identically situated to" her. *Id.* at 205; *see* DB58. That would be true if "[r]equiring a valid comparator to have taken the exact same actions as the [defendant] would effectively bar equal protection claims in unique situations[.]" *Harvard*, 973 F.3d at 205. But there's nothing unique about someone's impeding a federal law enforcement officer's exercise of his duties. In any event, *Harvard* involved a comparator whose "actions occurred during the same incident" as the plaintiff's "and could therefore be easily compared side-by-side." *Id.* at 205. There are two such comparators here: two other Members of Congress against whom the Government elected not to seek charges despite their attempts to impede the mayor's arrest. Because both Members belong to McIver's political party, that exercise of charging discretion eviscerates her claim.

the sense that the Due Process Clause requires. *Washington*, 869 F.3d at 214 (emphasis added); *see United States v. Armstrong*, 517 U.S. 456, 465 (1996) ("the claimant must show that similarly situated individuals of a different [class] were not prosecuted").

The "showing of [a] failure to prosecute" or investigate "similarly situated individuals" is an "*absolute requirement*" for a motion alleging selective prosecution or enforcement. *Id.* at 467 (emphasis added). McIver cannot meet that absolute requirement because *everyone* who benefitted from President Trump's proclamation had been prosecuted, hundreds of them had been convicted, and many of them spent substantial time in pretrial or posttrial detention. As the District Court found, all the January 6 defendants "were in fact prosecuted and subsequently pardoned." A37; *see* A44 ("[T]he January 6 defendants were all pardoned without the opportunity for prosecutorial discretion."). And as the court also found, the President's pardon proclamation afforded DOJ "no discretion when dismissing the January 6 defendants' criminal cases—the Presidential pardon *required* their dismissal." A36–37 (emphasis added). Those factual findings have ample support in the record, so this Court must defer to them.

The District Court found as a factual matter that the mass pardon entitled any January 6 defendant whose case was still pending to receive a certificate of pardon as a result. A36–37; *see also* A180 (DOJ "did take action to dismiss, but what came before that was the pardons and the reality, if those prosecutions were to proceed, they would be pardoned."). The court credited

– 35 –

the Government's representation that "the Office of the Pardon Attorney" had "confirmed that the January 6 Defendants whose cases were pending as of the issuance date of the Pardon are included in the universe of defendants who received pardons as a result, and the Pardon Office has issued certificates of pardon to those defendants upon request." A37 (cleaned up). The text of the President's mass pardon controls, of course, but a "more generous interpretation" by the executive "is entitled to deference" when reasonable. *Andrews v. Warden*, 958 F.3d 1072, 1078 (11th Cir. 2020). And the proclamation here was "sweeping." *United States v. GossJanikowski*, 348 F.R.D. 140, 144 (D.D.C. 2025).

As for selective enforcement, McIver cannot dispute that DOJ's investigation of the events culminating in the breach of the Capitol was one of the largest DOJ had ever undertaken and included the prosecution of hundreds of defendants who committed crimes less serious than McIver's. Indeed, it was undisputed below that DOJ "launched a large-scale investigation of the January 6 defendants and dedicated considerable financial and employee resources to that effort." A35. Law enforcement's investigation of McIver, in contrast, required little more than reviewing body camera and surveillance camera footage. A36 n.35. The District Court agreed as a factual matter that "the massive investigatory action brought against the January 6 Defendants entirely undermines any claim that the January 6 Defendants can be said to be similarly situated for enforcement purposes, particularly compared to the limited enforcement action DHS took against Defendant here." A36.

– 36 –

McIver's real complaint isn't that the Government never prosecuted or investigated the January 6 defendants who committed assaults; it's that the Government *stopped* prosecuting some of those defendants following the President's pardon proclamation. But it "would require an extension of existing case law on selective prosecution to novel circumstances" to grant someone relief because of someone else's pardon. *United States v. McCord*, 509 F.2d 334, 350–51 n.59 (D.C. Cir. 1974) (en banc). And it would require this Court to question the basis for the President's exercise of clemency, even though "pardon and commutation decisions" are "rarely, if ever, appropriate subjects for judicial review." *Connecticut Bd. of Pardons v. Dumschat*, 452 U.S. 458, 464 (1981).

The very nature of pardons shows why pardoned defendants cannot qualify as comparators for selective prosecution/enforcement purposes. Doubtless that is why McIver represented below that her Targeting motion didn't "rely on defendants who received pardons or commutation[.]" A34 n.32. The January 6 defendants' pardons didn't "eliminate" any convictions or "create any factual fiction" that those convictions haven't occurred. *United States v. Noonan*, 906 F.2d 952, 960 (3d Cir. 1990). The "granting of a pardon is in no sense an overturning of a judgment of conviction by some other tribunal; it is an executive action that mitigates or sets aside punishment for a crime." *Nixon v. United States*, 506 U.S. 224, 232 (1993) (cleaned up). "A pardon is an act of grace" that "exempts the" recipient "from the punishment the law

inflicts *for a crime he has committed*[.]" *United States v. Wilson*, 32 U.S. (7 Pet.) 150, 160 (1833) (emphasis added).

Because "the heart of executive clemency" is "to grant clemency as a matter of grace," the bestower of that grace may "consider a wide range of factors not comprehended by earlier judicial proceedings and sentencing determinations." *Ohio Adult Parole Auth. v. Woodard*, 523 U.S. 272, 280–81 (1998). That's true even when the executive grants clemency to a class of defendants—as President Biden did in commuting the death sentences of all but three federal death row inmates, *see* The White House, *Fact Sheet: President Biden Commutes the Sentences of 37 Individuals on Death Row* (Dec. 23, 2024),[4] and in pardoning everyone convicted federally for simple possession of marijuana, *see* Proc. No. 10467, 87 Fed. Reg. 61441 (Oct. 6, 2022); as President Carter did in granting amnesty to some 200,000 draft dodgers, *see* Proc. No. 4483, 42 Fed. Reg. 4391 (Jan. 21, 1977); and as President Johnson did in granting amnesty to thousands of former Confederates who took up arms against the Republic, Proc. No. 179 (Dec. 25, 1868).[5]

---

[4] *Available at* https://bidenwhitehouse.archives.gov/briefing-room/statements-releases/2024/12/23/fact-sheet-president-biden-commutes-the-sentences-of-37-individuals-on-death-row/ (last checked Apr. 28, 2026).

[5] *Available at* https://www.presidency.ucsb.edu/documents/proclamation-179-granting-full-pardon-and-amnesty-for-the-offense-treason-against-the (last checked Apr. 28, 2026). President Washington similarly pardoned nearly everyone associated with the Whiskey Rebellion. See GRAHAM C. DODDS, MASS PARDONS IN AMERICA: REBELLION, PRESIDENTIAL AMNESTY, AND RECONCILIATION 52, 65–70 (2021). And President Adams pardoned nearly everyone associated with Fries's Rebellion. *Id.* at 78–80.

No one thinks those grants of clemency mean that seeking the death penalty today for a capital offense or charging a defendant today with treason or insurrection would be impermissibly selective. Yet McIver effectively is asking this Court to hold that the President's pardon proclamation renders § 111 a dead letter. Suppose, for example, during a Democratic Administration a Republican Member of Congress is charged under § 111(a) for impeding a federal agent who is attempting to arrest someone else for blocking the entrance to an abortion clinic or a house of worship. Under McIver's mistaken view of selective prosecution, the pardon of the January 6 defendants would make that prosecution unconstitutional, too. Indeed, were McIver to prevail, *no* opponent of *any* Administration's policies could be investigated or prosecuted for violating § 111 unless their conduct exceeded the worst conduct of the January 6 defendants.

But even if the District Court erred in rejecting the January 6 defendants as comparators, McIver still couldn't prevail on her selective prosecution and enforcement claims absent a showing of discriminatory intent. Although the court declined to reach that issue definitively, A39, "the complete absence of evidence that Republican … officials engaged in the type of activity with which" McIver "was charged" shows that "the government did not engage in any intentional or purposeful discrimination in proceeding against" her, *Torquato*, 602 F.2d at 572; *see id.* at 571 (noting evidence that "Democratic administration" officials "extorted kickbacks" and absence of evidence that "Republican administration" officials similarly "extorted payments").

– 39 –

"Discriminatory purpose implies more than intent as awareness of consequences. It implies that the decisionmaker selected or reaffirmed a particular course of action at least in part because of, not merely in spite of, its adverse effects upon an identifiable group." *Wayte*, 470 U.S. at 610 (cleaned up). Here, McIver "has not shown that the Government prosecuted [her] because of" her protest or oversight activities. *Id.* As the District Court noted, "two more senior members of" McIver's political party "were present on May 9 conducting oversight of executive immigration policy who also surrounded the Mayor and objected to his arrest but were not criminally charged." A39 n.40; *see* A176 (conceding that the Government "may have had the appropriate discretion to decide the case was stronger against her than those two"). But even if that doesn't conclusively show the prosecutors here weren't acting with discriminatory intent, that would only warrant a remand for further proceedings on that prong of the test, not dismissal of the indictment. *See Washington*, 869 F.3d at 221–22. This Court is, "after all, a court of review, not a court of first view." *Callahan v. U.S. Dep't of Health & Human Servs.*, 939 F.3d 1251, 1266 (11th Cir. 2019).

Finally, despite McIver's arguments otherwise, DB47–49, 51, 58–59, *Frederick Douglass Foundation, Inc. v. District of Columbia*, 82 F.4th 1122 (D.C. Cir. 2023), didn't create a blanket exemption from the requirement to prove discriminatory intent just because the prosecution might implicate the First Amendment. *Frederick Douglass* concerned a defacing ordinance, a "[n]eutral regulation[]" that "may reasonably limit the time, place, and manner of

speech," but "cannot be enforced based on the content or viewpoint of speech." *Id.* at 1142. Section 111(a), in contrast, doesn't regulate speech at all; it proscribes conduct. So this isn't a case where "'speech' and 'non-speech' elements are combined in the same course of conduct[.]" *Wayte*, 470 U.S. at 611. McIver's view "would allow any criminal to obtain immunity from prosecution simply by" criticizing the Administration. *Id.* at 614 "The First Amendment confers no such immunity from prosecution." *Id.*

### C.   McIver's Vindictive Prosecution Claim Fails on Its Merits, Too.

The District Court properly rejected McIver's vindictive prosecution claim, too. Especially "when a prosecutor makes *an initial charging decision*, that decision is presumed to be a legitimate response to perceived criminal conduct.'" *United States v. Ball*, 18 F.4th 445, 454 (4th Cir. 2021) (cleaned up). McIver cannot overcome that presumption here.

The doctrine of prosecutorial vindictiveness "precludes action by a prosecutor that is designed to penalize a defendant for invoking any legally protected right available to a defendant *during* a criminal prosecution." *United States v. Meadows*, 867 F.3d 1305, 1311 (D.C. Cir. 2017) (emphasis added). To "raise successfully" that kind of claim, "the defendant must affirmatively establish vindictiveness[.]" *United States v. Pungitore*, 910 F.2d 1084, 1112 (3d Cir. 1990). "The relevant inquiry" is whether: "(1) the prosecutor harbored genuine animus" against the defendant; "and (2) absent this motive, [she] would not have been prosecuted." *United States v. Monsoor*, 77 F.3d 1031, 1034

(7th Cir. 1996) (cleaned up); *accord, e.g.*, *United States v. Sanders*, 211 F.3d 711, 717 (2d Cir. 2000).

There "are two ways in which a defendant can prove a claim of vindictiveness. First, a defendant may use evidence of a prosecutor's retaliatory motive to prove actual vindictiveness." *United States v. Paramo*, 998 F.2d 1212, 1220 (3d Cir. 1993). "Second, in certain circumstances, a defendant may show facts sufficient to give rise to a presumption of vindictiveness." *Id.* But those circumstances are "limited" and "have arisen" almost "exclusively in the post-trial context." *United States v. Jarrett*, 447 F.3d 520, 525 (7th Cir. 2006); *see United States v. Ray*, 899 F.3d 852, 860 (10th Cir. 2018) ("Indeed, neither the Supreme Court nor the Tenth Circuit has ever found presumptive vindictiveness in a pretrial setting.") (cleaned up)); *United States v. Stewart*, 590 F.3d 93, 122 (2d Cir. 2009) (same for Second Circuit).

"[W]here the presumption" of vindictiveness applies, "the prosecutor must rebut the presumption"; where the presumption doesn't apply, "the defendant must affirmatively prove actual vindictiveness." *Wasman v. United States*, 468 U.S. 559, 569 (1984) (plurality). But the "doctrine of vindictive prosecution must not be misapplied by blurring the distinction between what is actual retaliation and what is presumed. The presumption applies only to the extent it reflects the very real likelihood of actual vindictiveness." *United States v. Gallegos-Curiel*, 681 F.2d 1164, 1167 (9th Cir. 1982) (Kennedy, J.). "Because the presumption of vindictiveness must be applicable to all cases presenting the

same circumstances, it will rarely, if ever, be applied to prosecutors' pretrial decisions." *United States v. Wilson*, 262 F.3d 305, 315 (4th Cir. 2001).

This is not one of those rare cases. "The evil that a presumption of vindictiveness seeks to eradicate is the threat of retaliation when an accused exercises a right *in the course of the prosecution*. Where, however, the prosecutor has done nothing to deter the exercise of one's right *during the case or proceeding*, … no presumption of vindictiveness applies." *United States v. Esposito*, 968 F.2d 300, 303–04 (3d Cir. 1992) (emphases added). McIver points to nothing her prosecutors have done *during this case* to deter her exercise of rights *in this prosecution*. The Government hasn't, for example, piled on additional, more serious charges in response to any relief that McIver has sought. But even that by itself wouldn't trigger a presumption of vindictiveness. *See Goodwin*, 457 U.S. at 380–84.

McIver criticizes the District Court for "declin[ing] to accord a presumption of vindictiveness" merely because her "claim arose in the pretrial context[,]" DB63, but the court did no such thing. Instead, the court acknowledged "that '[t]here is good reason to be cautious before adopting an inflexible presumption of prosecutorial vindictiveness in a pretrial setting' because '[a]t this stage, the prosecutor's assessment of the proper extent of prosecution may not have crystalized[.]'" A41 n.45 (quoting *Goodwin*, 457 U.S. at 381). The District Court didn't hold that "that the presumption of prosecutorial vindictiveness does not exist in a pretrial setting." *Stewart*, 590 F.3d at 122 (cleaned up). Rather, the court noted the dearth of precedent in

– 43 –

this Circuit applying that presumption pretrial and that "'courts must be cautious in adopting'" one. A40–41 (quoting *Esposito*, 968 F.2d at 303).

Although McIver pretends otherwise, DB63–64, this case is nothing like *United States v. Meyer*, 810 F.2d 1242 (D.C. 1987). The *Meyer* court's "application of the presumption of vindictiveness" in the pretrial context there turned "in large part" on the Government's bringing an additional, more serious "charge against every member of a group of defendants that chose to proceed to trial." *United States v. Saltzman*, 537 F.3d 353, 362–63 (5th Cir. 2008). The "large number of defendants threatening to go to trial on petty offenses created a strong incentive for the prosecutor to discourage the assertion of legal rights." *Id.* at 363. Moreover, after "the trial court had granted the defendants a jury trial on the basis of the enhanced charges," the Government offered to dismiss the enhanced charges, permitting the district court to infer that "the prosecution" did so "only to prevent [the] defendants from invoking their right to a jury trial, not for any legitimate reason, such as a lack of evidence to support the charge." *Id.*; *see Meadows*, 867 F.3d at 1313–15 (similarly distinguishing *Meyer*).

Nor is this case anything like *United States v. Adams*, 870 F.2d 1140 (6th Cir. 1989), which McIver also invokes, DB60. The defendant there submitted an affidavit from "the former director of the" very EEOC office where the defendant had worked; that affiant swore under oath that he believed "the EEOC instigated the" defendant's prosecution "out of 'revenge'" for her having sued the EEOC. *Adams*, 870 F.2d at 1146. The record also showed that

the U.S. Attorney's Office had not until then prosecuted "taxpayers who underreport their income and then voluntarily amend their returns and pay the deficiency" or instituted "prosecutions for perjury" for "testimony given in civil proceedings[.]" *Id.* at 1145–46.[6]

Moreover, "even if a presumption applies, the government may rebut it by proffering legitimate, objective reasons for its conduct." *Esposito*, 968 F.2d at 305; *see Paramo*, 998 F.2d at 1220. That burden "to provide … objective evidence showing a non-retaliatory justification" is "minimal[.]" *United States v. Slatten*, 865 F.3d 767, 800 (D.C. Cir. 2017). The Government met its minimal burden here by highlighting that two other, more senior and better-known Democratic Members of Congress also tried to impede the mayor's arrest but were not charged. The reason for that is obvious: those two Members didn't make any physical contact with the federal law enforcement agents who were making that arrest, much less grab or strike the agents forcefully, as the body camera footage shows McIver did. A42.

Because McIver "cannot rely on a presumption of vindictiveness," she "must prove actual vindictiveness in order to prevail." *Paramo*, 998 F.2d at

---

[6] *United States v. Abrego Garcia*, 802 F. Supp. 3d 1055 (M.D. Tenn. 2025), DB63, is even farther afield. The court there found the defendant had made enough of a showing to warrant discovery and a hearing on his prosecutorial vindictiveness claim because he had persuaded the Supreme Court to affirm an order requiring the Government to facilitate his return from El Salvador. *Abrego-Garcia*, 802 F. Supp. 3d at 1059–60; *see Noem v. Abrego Garcia*, 145 S. Ct. 1017 (2025) (per curiam). Prevailing against the Government in high profile litigation is a far cry from anything McIver contends warrants a presumption of vindictiveness here.

1221. "Such proof" is "exceedingly difficult to make." *Id.* (cleaned up). "A charging decision does not levy an improper 'penalty' unless it results *solely* from the defendant's exercise of a protected legal right, rather than the prosecutor's normal assessment of the societal interest in prosecution." *Goodwin*, 457 U.S. at 380 n.11 (emphasis added). That is, the charges must have been "brought solely to 'penalize' the defendant" and cannot "be justified as a proper exercise of prosecutorial discretion." *Id.* at n.12. The District Court properly found as a factual matter that there was no actual vindictiveness here.

First, the court correctly found that DHS's public statements did not influence the decision to charge McIver. A40–41; *see* DB52–53, 61–62. "The animus of a referring agency is not, without more, imputed to federal prosecutors." *Monsoor*, 77 F.3d at 1035. "[T]o connect the animus of a referring agency to a federal prosecutor, a defendant must establish that the agency in some way prevailed upon the prosecutor in making the decision to seek an indictment." *Id.* In other words, "the defendant must show" that the prosecutor "was prevailed upon to bring the charges by another with animus such that the prosecutor could be considered a 'stalking horse[.]'" *Sanders*, 211 F.3d at 717. That's because the "prosecutor's charging decision" must be "*a direct and unjustifiable penalty* that resulted *solely* from the defendant's exercise of a protected legal right." *United States v. Bout*, 731 F.3d 233, 239 (2d Cir. 2013).

McIver proffered no evidence that anything DHS said or did actually prompted the prosecutors' charging decision in this case.[7]

Second, the District Court correctly found that statements Alina Habba made on a podcast before being sworn in as United States Attorney and statements the President made after McIver was charged don't show that the prosecutors who made that charging decision acted with any animus against McIver. DB53; *see United States v. Giraud*, 160 F.4th 390, 395 (3d Cir. 2025) ("Habba was sworn in on March 28."). As the court found, Habba's comments weren't "particularized" to McIver. A40. She didn't even mention McIver in that podcast interview, and the regrettable comment about "turn[ing] New Jersey red" was tied to being tough on crime. DE27, at 29–30. "[T]hese statements—remote in time and made in unrelated contexts—do not qualify as contemporary statements probative of the decision at issue." *DHS v. Regents of Univ. of California*, 591 U.S. 1, 35 (2020). As for the President's remarks, DB52, McIver omits that the President had "'no idea who'" she was and said he had *not* directed her prosecution. A40.

Third, the District Court correctly found that the Government's supposed "circumvention" of its normal approval procedures for charging a Member of Congress wasn't "evidence of retaliatory motive." A42; *see* DB53– 54. "Failure to follow internal operating policy in prosecuting is not, by itself,

---

[7] For the first time, McIver invokes a statement the then-DHS Secretary issued the same day that McIver "questioned" her "in a Homeland Security Committee hearing over her policies." DB61–62; *see* DB64. Because McIver didn't raise those factual matters below, this Court should disregard them.

evidence of vindictive prosecution." *Jarrett*, 447 F.3d at 529. "That the Department of Justice has developed an internal protocol for exercising discretion and channeling prosecutorial resources does not provide license for courts to police compliance with that protocol," and "internal prosecutorial protocols do not vest defendants with any personal rights." *United States v. Jackson*, 327 F.3d 273, 295 (4th Cir. 2003). Besides, DOJ didn't jettison any internal consultation requirements in order "to charge Congresswoman McIver." DB54. Even *before* McIver was charged, DOJ had already suspended its requirement to consult with the Public Integrity Section before prosecuting such a case. A42.

Fourth, as the District Court recognized, two other Democratic Members were also present at Delaney Hall yet weren't charged. A42. They, too, were in close proximity to the mayor, and they, too, lobbied on his behalf. *Id.* But unlike McIver, they didn't "physically contest" the mayor's arrest. *Id.* That reinforces the court's finding that the Government wasn't retaliating against McIver. She prefers a different inference. DB63–64. But "[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *United States v. Waterman*, 755 F.3d 171, 174 (3d Cir. 2014) (cleaned up).

### D.   The District Court Properly Exercised Its Discretion to Deny McIver's Far-Ranging Discovery Requests.

Finally, the District Court soundly exercised its discretion in denying McIver's requested fishing expedition into the Government's charging

– 48 –

decision. Below, she demanded six months of communications regarding the events at Delaney Hall or discussing her, the mayor or the oversight visit. A43. And McIver insisted the prosecution team for her fishing expedition included "the Attorney General, the Deputy Attorney General, the Assistant Attorney General for the Criminal Division, the Interim or Acting U.S. Attorney for the District of New Jersey, the DHS Secretary, Deputy Secretary, General Counsel, and their staff," plus "all members of ICE leadership and members of their staff." A43. McIver wasn't entitled to any of that discovery, let alone all of it.

On appeal, McIver has abandoned her contention below that she deserved discovery on her selective enforcement claim. DB64.[8] And she doesn't bother defending the breadth of her discovery demands. DB64–66. Instead, she contends she's shown "'*some* evidence' of selective or vindictive prosecution" sufficient "to obtain discovery on those claims." DB64. She's wrong for both claims. The standards for obtaining discovery for such claims aren't as onerous as the ones for proving those claims. *See Washington*, 869 F.3d at 214–15. But those standards are still "a demanding gatekeeper." *Id.* at 215.

For selective prosecution, defendants must make a "credible showing" of both "discriminatory effect and discriminatory intent." *Armstrong*, 517 U.S. at

---

[8] Under *Washington*, the threshold for obtaining discovery on a selective enforcement claim is lower than for a selective prosecution claim. 869 F.3d at 219–20. The Government preserves for any further review its position that *Washington* erred in this respect. *See* DE27, at 32 n.19.

468; *accord United States v. Bass*, 536 U.S. 862, 863 (2002) (per curiam). For vindictive prosecution, defendants must "come forth with 'some' objective evidence tending to show the existence of prosecutorial vindictiveness." *United States v. Bucci*, 582 F.3d 108, 113 (1st Cir. 2009). But the defendant "must do more than simply identify a potential motive for prosecutorial animus. He must connect any vindictive animus to those making the challenged charging decisions in his case." *Id.* at 114 (cleaned up). Each standard "is a rigorous one," and rightly so. *Sanders*, 211 F.3d at 717.

Here, McIver didn't proffer any evidence at all of discriminatory effect in support of her selective prosecution claim: She made no "showing that similarly situated persons were not prosecuted." *Washington*, 869 F.3d at 215. Once again, the January 6 defendants were prosecuted—vigorously—but later pardoned. A44. As for vindictive prosecution, McIver proffered no evidence connecting any vindictive animus that anyone in the Administration supposedly had against her to the prosecutors who actually decided to charge her after dispassionately reviewing the evidence. And McIver certainly proffered nothing like the evidence of animus in *United States v. Jones*, 159 F.3d 969 (6th Cir. 1998), her proposed "benchmark." DB64. The "conduct of" the law enforcement officers there "was not only outrageous and unprofessional, but also racially motivated." *Jones*, 159 F.3d at 977.

## CONCLUSION

For all these reasons, this Court should dismiss McIver's appeal from the denial of her Targeting motion and affirm the District Court's orders denying her Speech or Debate Clause motion.

Respectfully submitted,

ROBERT FRAZER
UNITED STATES ATTORNEY

By:   Mark E. Coyne
Supervisory Assistant U.S. Attorney
Chief, Appeals Division
970 Broad Street, Suite 700
Newark, New Jersey 07102
(973) 297-2002

Date: May 5, 2026

**CERTIFICATE OF COMPLIANCE, FILING AND SERVICE**

I hereby certify that this brief complies with the typeface, type style and length limits of Federal Rule of Appellate Procedure 32(a). The brief contains 12,974 words and was prepared using Microsoft Word for Microsoft 365 MSO's 14-point proportionally spaced Calisto MT typeface.

I further certify that on May 5, 2025, I filed with the Clerk of this Court PDF copies of this brief and the accompanying supplemental appendix using this Court's electronic case filing system. Those PDF copies were prepared on a computer automatically protected by an updated version of Trellix Endpoint Security and no virus was detected.

I further certify that on May 5, 2025, I caused copies of this brief and the supplemental appendix to be served, by the notice of docketing activity generated by this Court's electronic case filing system, upon all counsel of record in this appeal.

I further certify that I am causing seven hard copies of this brief and four hard copies of the supplemental appendix to be delivered to this Court by private courier. Those copies are identical to the filed versions.

Mark E. Coyne
Assistant U.S. Attorney
Chief, Appeals Division

Dated: May 5, 2026